782 So.2d 1063 (2001)
STATE of Louisiana
v.
Bruce LEE (Sentenced as Bruce E. Lee).
No. 00-KA-1253.
Court of Appeal of Louisiana, Fifth Circuit.
January 30, 2001.
*1064 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Churita H. Hansell, John B. Appel, Jr., Assistant District Attorneys, Gretna, LA, Attorneys for Plaintiff/Appellee.
Bruce G. Whittaker, Louisiana Appellate Project, New Orleans, LA, Attorney for Defendant/Appellant.
Panel composed of Judges GOTHARD, CHEHARDY and McMANUS.
GOTHARD, Judge.
Defendant, Bruce Lee, was convicted of illegal possession of a firearm by a convicted felon; namely, a .22 caliber handgun in violation of LSA-R.S. 14:95.1. Before sentencing, defendant argued a motion for new trial, filed that day, alleging he was denied his right to present the defense of justification. LSA-C.Cr.P. art. 851. The trial judge denied the motion. Defendant waived all legal delays and the trial judge imposed the sentence of 12 years at hard labor without benefit of probation, parole, or suspension of sentence. Defendant appealed. For the following reasons, we affirm the defendant's conviction and sentence.
The parties stipulated that defendant had a prior felony conviction enumerated under LSA-R.S. 14:95.1 and that it occurred within the last ten years. It is undisputed defendant possessed a firearm. The defendant argued, and presented evidence to allegedly show he lacked the requisite intent because his act of possession was justified.
On December 30, 1998, Deputy Willis Eurissa, Jr., who was assigned to the Third District in Jefferson Parish, patrolled the area alone, uniformed, and in a marked unit. Spotting two individuals, defendant and Charles Priar (Priar), standing suspiciously at the corner of Sauvage Rue Volatire, a high drug trafficking area, he stopped.
Deputy Eurissa approached the two men to conduct a field interview, and defendant reached into his jacket's hood. The deputy, fearful of his safety, grabbed defendant by *1065 the wrist, and escorted him to the vehicle. He placed both men on their knees and patted them down. He felt in the hood area of defendant's jacket and retrieved a .22 caliber gun. Defendant was handcuffed, read his constitutional rights, and arrested. He was first arrested for illegal carrying of a concealed firearm until the deputy learned defendant had a felony conviction. He was arrested for the current offense. Priar was subsequently released.
Priar, defendant's neighbor, testified and he described the event differently. Priar stated that he was leaving his house when he saw defendant walking quickly. It was dark. Priar yelled to defendant and noticed from defendant's expression that something was wrong. Defendant told Priar there were trespassers in defendant's backyard. The two men looked around the area to see if anyone saw anything. They were unsuccessful and were returning when a policeman pulled up.
Defendant did not tell Priar about a gun. The policeman asked them to come to the car and place their hands on the vehicle. Priar thought they were stopped because Priar had a beer, although it was unopened. The officer asked if they had any weapons while he frisked them. Defendant responded affirmatively, pointing to the back and telling the officer it was in the back of his hood. The officer found the gun. Approximately four other units arrived. They joked about the gun being involved in a homicide and suggested that the two men would be implicated in the crime.
Although Priar denied defendant told him about the gun, he also testified inconsistently that defendant tried to tell the officers what happened but he could not make them understand. He stated defendant was on his way home to tell his fiancée to call the police so that he, defendant, could turn in the gun.
Wanda Stipe (Wanda) and Murphy Stipe (Murphy) lived across the street from defendant. The Stipes testified they saw two males run out of defendant's yard on December 30, 1997. Wanda testified she, Murphy, and two children were in front of her house around 9:00 p.m. when the men ran. Her husband, Murphy, however, testified he was sitting alone in front of his house 20 to 30 minutes before defendant arrived at approximately 8:00 or 9:00 p.m. He specifically testified his wife was not present at that time but stated his wife was outside approximately 10 to 20 minutes after the men ran out the yard.
Wanda provides a day care, caring for six children, five days a week. These children play on the cemented area that surrounds defendant's house. Certain parts of the area are known for high crime. She has no firearms in her house. She has never known defendant to carry a gun.
Murphy testified he told his wife that when defendant returned he would tell him about the two men. He told defendant when defendant arrived. He and defendant walked around defendant's house, with Murphy in front of defendant. Defendant said, "Look what I found." Murphy turned and saw the gun. Defendant had the gun in his hand when they walked toward the front of the house. Defendant went to see what was going on and Murphy returned to his, Murphy's house, because Murphy had no shoes and no shirt. Shortly thereafter, Murphy saw the police.
Murphy did not pick up the gun because it was not his property and he felt his wife would not allow him to have one at the house. He also did not dispose of the gun because it was not on his property and it was not his responsibility. He never saw defendant with a gun. Defendant did not tell Murphy what he, defendant, would do with the weapon. Murphy did not know the *1066 exact location where the gun was found because he did not see where defendant picked up the gun.
Priar testified he knew the Stipes, who lived across the street from him. He saw them earlier that day, but did not, however, see them outside when he, Priar, was out. Murphy also testified he did not see Priar that night.

ANALYSIS
On appeal, defendant argues that the trial court erred in denying his constitutional right to present a defense.
A criminal defendant has a constitutional right to present a defense. La. Const. Art. I, § 16. As stated in State v. Casey, 99-0023 (La.1/26/00), 775 So.2d 1022, 1037 (citations partially omitted):
To this end, a defendant should be allowed to present evidence on any relevant matter. However, the right to present a defense is not without limits and the state retains a legitimate interest in barring unreliable evidence from criminal trials.
In this case, defendant argues the trial judge denied him his constitutional right to present the defense that he was justified by law to take possession of a firearm to protect others from the imminent peril of its misuse. He contends possession was necessary to prevent the gun's use by the trespassers, and/or to prevent it from falling into a child's hands. Defendant further complains the trial judge limited him by excluding Deputy Eurissa's testimony about a call reported immediately before the incident concerning two black males holding a gun to the head of a person at a nearby location. He also complains the trial judge erred in excluding D-2-A, a printout evidencing the call. Defendant asserts the excluded evidence carries great weight because it came from "the presumably unimpeachable source of law enforcement."
The defense of justification is found in La. 14:18. It states in pertinent part:
The fact that an offender's conduct is justifiable, although otherwise criminal, shall constitute a defense to prosecution for any crime based on that conduct. This defense of justification can be claimed under the following circumstances:
(7) When the offender's conduct is in defense of persons or of property under any of the circumstances described in Articles 19 through 22 [justifiable homicide, aggressor cannot claim self-defense, and defense of others].
Also relevant in this case is La. R.S. 14:22, which provides for defense of others as follows:
It is justifiable to use force or violence or to kill in the defense of another person when it is reasonably apparent that the person attacked could have justifiably used such means himself, and when it is reasonably believed that such intervention is necessary to protect the other person.
The Louisiana Supreme Court has recognized such a defense to the instant charge of illegal possession of a firearm by a convicted felon:
We hold that when a felon is in imminent peril of great bodily harm, or reasonably believes himself or others to be in such danger, he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. In such situation justification is a defense to the charge of felon in possession of a firearm.
This is not to say that a convicted felon is entitled to own or maintain possession of a weapon, constructive possession or otherwise, for protection, or for any other reason.
*1067 State v. Blache, 480 So.2d 304, 308 (La. 1985).
Defendant also argues the defense of "necessity." "`Necessity,' when raised as a defense to the illegal possession of a firearm, entails proof that the threat or force by another is imminent and apparent, and that the person threatened has no reasonable alternative but to possess the firearm." State v. Jackson, 452 So.2d 776, 779 (La.App. 4 Cir.1984). (emphasis in original).
In order to prove the defense of justification, defendant must show he was in imminent peril of great bodily harm, or reasonably believed himself or others to be in such danger. If so, then he may take possession of a weapon for a period no longer than is necessary or apparently necessary to use it in self-defense, or in defense of others. Blache, 480 So.2d at 308. In order to show "necessity," defendant must prove that the threat of force by another is imminent and apparent, and that he had no reasonable alternative to possession of the firearm. Jackson, 452 So.2d at 779.
The State counters that defendant could have called the police to retrieve the gun.
In his defense, defendant did not establish the immediacy of the threat or the lack of a reasonable alternative to his possession of the gun. Defendant was not at home when he possessed the gun so that, at the time he possessed it, the gun could not have been necessary to the defense of his home and family. Neither defendant nor anyone else was in imminent peril of great bodily harm to justify possession.
Defendant sought to show possession was "necessary" because the children played in the area where the gun was located. However, no immediacy of the threat that children would gain possession of the gun was shown. There was no testimony or evidence proffered or otherwise introduced that, at the time the gun was found, children were in defendant's yard or that children would have gained access to the gun.
Defendant alleges as error the trial court's refusal to allow him to introduce evidence to show that the gun was in defendant's yard because two black males with the gun were running through the neighborhood. Even if this evidence had been presented to the jury, and accepted by the jury as true, the method by which the gun was in the backyard is irrelevant to the defense of justification/"necessity" because it fails to meet the jurisprudential standard noted above. Importantly, this evidence would not have shown that defendant was in imminent peril of great bodily harm, or that he reasonably believed himself or others to be in such danger.
We find no merit to the defendant's allegation of error.

ERROR PATENT DISCUSSION
We have reviewed the record for errors patent, according to LSA C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975) and State v. Weiland, 556 So.2d 175 (La. App. 5 Cir.1990), and note the following.
The trial judge properly informed defendant of the three-year prescriptive period for filing post-conviction relief that was in effect at the time of sentencing. The period, however, was shortened to two years, effective August 15, 1999. 1999 La. Acts No. 1262. Considering the amendment has retroactive application according to State v. Boles, 99-662, p. 6 (La.App. 5 Cir. 11/10/99), 750 So.2d 1059, 1062, we remand this case and order the trial judge to inform the defendant of the correct provisions of the article by sending appropriate written notice to him within ten days of the opinion and to file written *1068 proof in the record that defendant received same. State v. Pickett, 99-532 (La.App. 5 Cir. 10/26/99), 746 So.2d 185.
We also note that the defendant's sentence is illegally lenient. La. R.S. 14:95.1B requires the imposition of a fine of not less than $1,000 nor more than $5,000. The trial judge did not impose the mandatory fine. The state, however, does not complain of the error. Thus, this court, in accordance with State v. Fraser, 484 So.2d 122, 124 (La.1986), does not correct the illegally lenient sentence.
Accordingly, the defendant's conviction and sentence are affirmed. The case is remanded for the trial court to inform defendant of the newly enacted legal delays for post-conviction relief.
AFFIRMED AND REMANDED.