792 So.2d 133 (2001)
STATE of Louisiana
v.
Robert FLAGG.
No. 01-KA-65.
Court of Appeal of Louisiana, Fifth Circuit.
July 30, 2001.
*136 Paul D. Connick, Jr., District Attorney, Thomas J. Butler, Terry M. Boudreaux, Cameron M. Mary, Assistant District Attorneys, Gretna, LA, for Plaintiff-Appellee.
J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, LA, Jane L. Beebe, Gretna, LA, for Defendant-Appellant.
Panel composed of Chief Judge EDWARD A. DUFRESNE, Jr., Judges SOL GOTHARD and CLARENCE E. McMANUS.
DUFRESNE, Chief Judge.
The Jefferson Parish District Attorney filed a bill of information charging defendant, Robert Flagg, with possession of heroin, in violation of LSA-R.S. 40:966C.[1] Defendant pled not guilty and subsequently filed a motion to suppress evidence which was denied by the trial judge. Following this denial, defendant waived his right to a trial by jury and proceeded to a bench trial. After considering the evidence presented, the judge found defendant guilty as charged. Defendant thereafter filed a motion for new trial on the basis of new evidence. The court denied the motion and then sentenced defendant to imprisonment at hard labor for ten years on the heroin conviction and five years on the cocaine conviction to run concurrently.
The state subsequently filed a bill of information alleging defendant to be a fourth felony offender based on the possession *137 of heroin conviction. Defendant initially denied the allegations contained in the multiple bill and a hearing was set. Prior to the hearing, defendant filed a motion to quash the multiple offender bill of information on the basis that he was not adequately advised of his rights in the three predicate pleas. The trial court denied the motion to quash after a hearing. Thereafter, defendant stipulated to the allegations contained in the multiple bill. The trial court vacated defendant's original ten year sentence on the conviction for possession of heroin and sentenced defendant, as a fourth felony offender, to life imprisonment without benefit of parole, probation or suspension of sentence. Defendant then filed a motion to reconsider sentence which was denied by the trial judge. Defendant now appeals. For the reasons set forth herein, we affirm.

FACTS
In late September 1999, Agent Frank Horn, a narcotics detective with the Jefferson Parish Sheriff's Office, received information regarding the sale of crack cocaine from a specific residence in Marrero by a black male identified as "Jay" and a black female identified as "Anastasia." Agent Horn recognized the names and address because of a previous surveillance and investigation of the same residence in March 1999. As a result of the information, Agent Horn conducted a visual surveillance of the residence for approximately one and one-half hours. During the surveillance, he observed approximately fifteen cars coming and going from the house. He watched as the driver or a passenger would exit the car and either enter the residence or meet someone at the door. The person would stay at the house two to three minutes before leaving. Based on this activity, Agent Horn suspected narcotics trafficking. However, no police action was taken that night.
Agent Horn conducted a second surveillance of the residence on October 1, 1999. During this surveillance, Agent Horn observed the same activity with eight to nine cars stopping at the residence within a one hour period. Specifically, the cars would pull up to the house and someone would exit the vehicle, enter the residence or meet with someone at the residence, stay for two to three minutes and then leave. The last car that stopped had two people, including defendant. According to Agent Horn, the driver, Alton Perry[2], exited the vehicle while defendant remained in the front passenger's seat. Perry entered the house, stayed for three to five minutes and came out of the house with a third person, identified as Eric Proctor. Both men got into the car with defendant, Perry as the driver and Proctor as the back seat passenger, and drove away.[3]
As the car left the residence, Agent Horn instructed the surveillance team via radio to stop the vehicle. Agent Horn testified that the reason he instructed the surveillance team to stop the vehicle was to obtain information regarding the third person who exited the house with the driver and general information as to what the vehicle was doing at the residence. He believed the occupants of the vehicle had been involved in a drug transaction. Additionally, *138 Agent Horn hoped to gain enough information to secure a search warrant for the residence.
The vehicle was intercepted a few blocks away by Agent Eric Pearsons and two other police officers. All three individuals were ordered out of the car, instructed to lie down on the ground, and frisked for weapons. No weapons were found. Agent Pearsons then looked in the car and saw a clear plastic fuse box on the floorboard between the driver's seat and the passenger's seat. The fuse box contained four off-white rocks, which Agent Pearsons believed to be crack cocaine, and a piece of wrapped aluminum foil which was consistent with heroin packaging. Agent Pearsons seized the fuse box and conducted a field test of its contents which confirmed the presence of cocaine and heroin. Defendant and Perry were subsequently arrested.

DENIAL OF MOTION TO SUPPRESS EVIDENCE
In his first assigned error, defendant argues that the trial court erred in denying the motion to suppress evidence seized from the automobile. He asserts that there was no reasonable suspicion to justify the initial investigatory stop and, thus, the contraband seized from the car was the fruit of an illegal search. In particular, defendant maintains his mere presence at a location where drug trafficking is suspected is insufficient to justify an investigatory stop. Defendant further asserts the police did not see any suspicious activity among the occupants of the vehicle to suggest criminal activity and, therefore, the investigatory stop was unjustified.
In a hearing on a motion to suppress, the state bears the burden of proof in establishing the admissibility of evidence seized without a warrant. LSA-C.Cr.P. art. 703(D). The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
Law enforcement officers are authorized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence, to conduct investigatory stops which allow officers to stop and interrogate a person reasonably suspected of criminal activity. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984); State v. Gresham, 97-1158 (La.App. 5 Cir. 4/15/98), 712 So.2d 946, writ denied, 98-2259 (La.1/15/99), 736 So.2d 200. Investigatory stops require reasonable suspicion of criminal activity. "Reasonable suspicion" is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
The facts upon which an officer bases an investigatory stop should be evaluated in light of the circumstances surrounding the incident. A reviewing court must take into consideration the totality of the circumstances and give deference to the inferences and deductions of a trained police officer that might elude an untrained person. State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048.
An officer's experience, his knowledge of recent criminal patterns and his knowledge of an area's frequent incidence *139 of crimes, are factors that may support reasonable suspicion for an investigatory stop. State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98. In addition, the reputation of a neighborhood as a high crime area is an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable suspicion for an investigatory stop. State v. Davis, 00-278 (La.App. 5 Cir. 8/29/00), 768 So.2d 201. Furthermore, an anonymous tip corroborated by police surveillance can, under some circumstances, supply enough reliability to support an investigatory stop. Alabama v. White, 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990). State v. Morgan, 00-1501 (La.App. 5 Cir. 3/28/01), 783 So.2d 514.
In the present case, the suppression hearing consisted only of argument and the submission of the police report. The police report does not indicate the facts and circumstances surrounding the investigatory stop. Rather, the police report merely states the officer "conducted an investigatory stop on a vehicle driven by the co-defendant in which the defendant was a passenger." However, in reviewing the trial court's ruling on a motion to suppress, this court may consider evidence presented at trial as well as the motion hearing. State v. Gresham, supra.
At trial, Agent Horn testified that he "received information from several sources in the neighborhood" regarding drug trafficking at a specific residence in Marrero by a black male identified as "Jay" and a black female identified as "Anastasia." Agent Horn recognized the names and address because of a previous surveillance and investigation of the same residence in March 1999. As a result of the information received, Agent Horn set up surveillance of the residence on two occasions. On both occasions, the police observed numerous vehicles coming and going from the house. When these cars pulled up to the house, the driver or a passenger would exit and either enter the residence or meet someone at the door. The person would stay at the house two to three minutes before leaving. The last car that stopped on the second surveillance had two people, including defendant. According to Agent Horn, the driver, Alton Perry, exited the vehicle while defendant remained in the front passenger's seat. Perry entered the house, stayed for three to five minutes and came out of the house with a third person, identified as Eric Proctor. Both men got into the car with defendant, Perry as the driver and Proctor as the back seat passenger, and drove away. Believing this activity to be consistent with narcotics trafficking, the police then effected an investigatory stop of the vehicle.
Based on the tip, some police corroboration of the tip, prior suspicion of the residence at issue and the location of the encounter in a high drug trafficking area[4], we find that the police had reasonable suspicion to justify an investigatory stop. The mere fact there was no illegal or suspicious activity suggestive of drug dealings among the occupants of the vehicle in which defendant was riding does not abrogate the reasonable suspicion created by the totality of the circumstances. Having found that the initial stop of the car was justified, we likewise find that the seizure of the narcotics was proper pursuant to the plain view exception to the *140 warrant requirement. State v. Williams, supra. Based on the foregoing discussion, we find that the arguments raised by defendant in this assigned error are without merit.

SUFFICIENCY OF THE EVIDENCE
In his second assigned error, defendant challenges the sufficiency of the evidence used to convict him. He asserts there was no evidence that he knowingly possessed the heroin and cocaine found in the vehicle and, therefore, the evidence was insufficient to convict him. He claims the drugs belonged to the driver and were placed in the car by the driver unbeknownst to him. Defendant asserts the unrefuted testimony of Eric Proctor, the backseat passenger who testified that the driver reached down towards the floor of the car when the car was stopped, proves the drugs did not belong to him.
The constitutional standard for testing the sufficiency of the evidence, enunciated in Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), requires that a conviction be based on proof sufficient for any rational trier of fact, viewing the evidence in the light most favorable to the prosecution, to find the essential elements of the crime beyond a reasonable doubt. State v. Ortiz, 96-1609 (La.10/21/97), 701 So.2d 922, cert. denied, 524 U.S. 943, 118 S.Ct. 2352, 141 L.Ed.2d 722 (1998).
In the present case, defendant was convicted of possession of heroin, in violation of LSA-R.S. 40:966C. To support a conviction for possession of narcotics, the state must prove that defendant was in possession of the narcotics and that he knowingly or intentionally possessed them. Guilty knowledge is a state of mind and need not be proven as fact but rather may be inferred from the circumstances. State v. Gentras, 98-1095 (La.App. 5 Cir. 3/30/99), 733 So.2d 113, writ denied, 99-1302 (La.10/15/99), 748 So.2d 464.
In discussing the element of possession, this court, in State v. Reyes, 98-424 (La. App. 5 Cir. 12/29/98), 726 So.2d 84, 88-89, writ denied, 99-1474 (La.10/8/99), 750 So.2d 967, stated:
... The element of possession may be established by showing that the defendant exercised either actual or constructive possession of the substance. A person not in physical possession of narcotics may have constructive possession when the drugs are under that person's dominion or control.
Guilty knowledge is an essential element of the crime of possession of contraband, and such knowledge may be inferred from the circumstances. Proximity to the drug, or association with the possessor, may establish a prima facie case of possession when colored by other evidence. However, the mere presence of the defendant in the area where a controlled dangerous substance is found, or mere association with a person in possession of the substance, is insufficient to constitute constructive possession.
Several factors may be considered in determining whether the defendant exercised dominion and control sufficient to constitute constructive possession. They are (1) the defendant's knowledge that illegal drugs were in the area; (2) his relations with the person found to be in actual possession; (3) the defendant's access to the area where the drugs were found; (4) evidence of recent drug use by the defendant; (5) the existence of paraphernalia and (6) evidence that the area was frequented by drug users. [citations omitted].
In the present case, defendant was stopped in a high drug trafficking area. The cocaine and heroin were found *141 in a clear plastic fuse box lying in plain view on the hump of the floorboard between the driver's seat and passenger's seat. Defendant, as the front seat passenger, was within an arm's reach of the drugs and thus had easy and immediate access to them. Furthermore, the police report indicates that the car belonged to defendant's brother. Given these facts, we find that a rational trier of fact, viewing the evidence in the light most favorable to the prosecution, could have found beyond a reasonable doubt that defendant was in possession of the narcotics and that he knowingly possessed them. Accordingly, the arguments raised by defendant in this assignment are without merit.

DENIAL OF MOTION FOR NEW TRIAL
In this assignment, defendant argues that the trial court erred in denying his motion for a new trial which was based on newly discovered evidence. Defendant asserts the testimony of his co-defendant, Alton Perry, which not available at the time of trial, proves the drugs did not belong to defendant and that he had no knowledge the drugs were in the car.
A motion for new trial is based upon the supposition that injustice has been done to the defendant, and, unless such injustice is shown, the motion shall be denied no matter upon what allegations the new trial is grounded. LSA-C.Cr.P. art. 851. When a motion for new trial is based on new evidence the following four requirements must be met: 1) the evidence must have been discovered since the trial, 2) failure to learn of the evidence at the time of trial must not be due to defendant's lack of diligence, 3) the evidence must be material to the issues at the trial, and 4) it must be of such a nature that it would probably change the verdict in the event of retrial. LSA-C.Cr.P. art. 851(3). The ruling on a motion for new trial is within the sound discretion of the trial judge and will be disturbed on appeal only when there is a clear showing of abuse of that discretion. State v. East, 99-1379 (La.App. 5 Cir. 7/25/00), 768 So.2d 173.
In his initial motion for new trial, defendant asserted that the verdict was contrary to the law and the evidence. At the first hearing on the motion for new trial on March 17, 2000, defendant argued insufficient evidence as the basis for his motion. However, towards the end of the hearing, defense counsel indicated, "Mr. Perry is now indicating to me that he was the one that possessed the drug and threw them on the ground and that Mr. Flagg did not know anything about the drugs. So, I'd like to add that to my motion for new trial." Although Perry was present at the hearing, he was unable to take the stand because his attorney was not present. As such, the trial court continued the hearing.
A second hearing was held on April 27, 2000. Prior to the second hearing, defendant filed an amended motion for new trial asserting new evidence as an additional basis for his motion. At the second hearing, Perry testified that the cocaine and heroin was his. He stated that when the police stopped the vehicle, he had the drugs in his right hand at which time he pushed the drugs down between the seat. Perry further testified that defendant had no knowledge of the drugs. At the end of the hearing, defense counsel argued that Perry's testimony was not available at the time of defendant's trial because had Perry, a co-defendant, been called to testify he would have invoked his Fifth Amendment privilege. Defense counsel also argued that it was only subsequent to defendant's trial that Perry admitted the drugs were his. After considering the evidence presented, the trial judge denied defendant's *142 motion for new trial. We find no error in the trial court's ruling.
The Louisiana Supreme Court recognizes that testimony made "newly available" to a defendant may, under certain circumstances, constitute newly discovered evidence for purposes of a new trial under LSA-C.Cr.P. art. 851. However, the Supreme Court has emphasized that a defendant must still show that he exercised reasonable diligence to present all of his evidence, including the "newly available" testimony, in a single trial. State v. Bright, 98-0398 (La.4/11/00), 776 So.2d 1134; State v. Mince, 97-2947 (La.5/29/98), 714 So.2d 684.
At the hearing on the motion for new trial in the present case, defense counsel argued that had Perry been called as a witness at defendant's trial he would have invoked the Fifth Amendment. However, there is no indication in the record that any attempt was made to call Perry to testify at trial. Specifically, there is no evidence any subpoena was issued to Perry and there is no mention of Perry's possible testimony during defendant's bench trial. Given these circumstances, we find that defendant failed to show that he exercised reasonable diligence to present the "newly available" evidence in a single trial. Accordingly, the trial court did not abuse its discretion in denying defendant's motion for new trial. This assigned error is without merit.

MULTIPLE OFFENDER PROCEEDINGS
In this assignment, defendant argues the trial court erred in denying his motion to quash the multiple offender bill of information on the basis there was inadequate proof of the validity of the prior convictions.
In the present case, the multiple offender bill of information alleged defendant was a fourth felony offender based on three prior convictions: 1) a conviction for illegal possession of stolen things, LSA-R.S. 14:69, on October 17, 1991 based on a guilty plea in Orleans Parish Criminal District Court (case number 351-940); 2) a conviction for attempted simple burglary, LSA-R.S. 14:27:62, on May 18, 1992 based on a guilty plea in the 24th Judicial District Court of Jefferson Parish (case number 92-35); and 3) a conviction for theft, LSA-R.S. 14:67, on July 1, 1993 also based on a guilty plea in the 24th Judicial District Court of Jefferson Parish (case number 93-522). After denying the allegations contained in the multiple bill, defendant filed a motion to quash the bill on the basis the predicate pleas were defective. A hearing was held during which the state offered various documentary evidence pertaining to the three predicate pleas. Thereafter, the trial court determined all three predicate pleas were valid and denied defendant's motion to quash. Defendant now challenges this ruling. With regard to the Orleans Parish conviction, defendant asserts that the state's submission of only a minute entry was inadequate to show that he was properly Boykinized in that predicate plea. As far as the two Jefferson Parish convictions, defendant claims that the guilty plea form and transcript introduced by the state fail to show that defendant was properly advised of his rights by the trial judge prior to the acceptance of those two pleas. Defendant notes that while the documents introduced by the state at the multiple offender hearing show that defendant's attorney advised him of his rights, they fail to indicate that the trial judge reviewed each of those rights with defendant. We have reviewed defendant's arguments and find them to be without merit.
When the state relies on a prior conviction that is based on a guilty plea *143 to prove defendant's multiple offender status and the defendant denies the allegations of the multiple bill of information, the state has the burden of proving the existence of the prior guilty plea and that defendant was represented by counsel. Once the state meets this burden, the defendant must produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. If the defendant meets this burden, the burden shifts back to the state to prove the constitutionality of the plea, i.e., that it was knowing and voluntary. The state can meet this burden by producing a "perfect" transcript of the guilty plea colloquy. A "perfect" transcript is one that reflects a voluntary, informed, and articulated waiver of the three specific rights discussed in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969): 1) the right to trial by jury, 2) defendant's privilege against self incrimination, and 3) his right to confront his accusers. Anything less than a "perfect" transcript, such as a guilty plea form, a minute entry, or imperfect transcript, requires the trial judge to weigh the evidence submitted by both sides and determine whether defendant's prior plea was knowing and voluntary and made with a waiver of the Boykin rights. State v. Shelton, 621 So.2d 769 (La.1993).
In the present case, in proving the validity of the October 17, 1991 Orleans Parish conviction, the state offered a certified copy of the bill of information and several minute entries. The October 17, 1991 minute entry is very detailed and states in pertinent part:
Through counsel, each defendant waived the reading of the bill of information and entered a plea of guilty as charged. The Court interrogated each defendant as to his understanding of his giving up his constitutional rights, i.e., his right to trial by judge or jury, his right to confront and cross-examine witnesses against him, his right to call witnesses in his own behalf, his right to appeal, his right to remain silent, his rights against self-incrimination, and his right not to testify should he go to trial. The Court having explained the same, each defendant answered in the affirmative. A plea of guilty form as to each defendant was filed into the record.
Under State v. Shelton, supra, the state met its initial burden of proof in demonstrating the existence of a guilty plea and that defendant was represented by counsel at the time. The burden then shifted to defendant to show an infringement of his rights or a procedural irregularity in the taking of the plea. Defendant failed to meet this burden. During the hearing on the motion to quash, defense counsel admitted he had no affirmative evidence. His sole argument was that the minute entry alone failed to show defendant was properly Boykinized. Since defendant failed in his proof, the burden never shifted back to the state to prove the constitutionality of the plea.
Moreover, even if we were to assume that defendant met his burden of showing an impingement of his rights, we find that the state sufficiently proved the constitutionality of the plea by the introduction of the very detailed minute entry. It has been held that a minute entry alone may provide sufficient proof of a valid predicate plea. State v. Bland, 419 So.2d 1227 (La. 1982); State v. Moten, 619 So.2d 683 (La. App. 4 Cir.1993); State v. Ourso, 502 So.2d 246 (La.App. 3 Cir.1987). Based on the foregoing, we find that the trial court properly denied defendant's motion to quash the multiple bill of information based on this 1991 predicate plea.
With regard to the Jefferson Parish convictions of May 18, 1992 and July 1, 1993, the state offered in each case a certified *144 copy of the bill of information, the waiver of rights form, the applicable minute entry, the commitment and the transcript of the plea colloquy. In both prior pleas, the waiver of rights form was signed by defendant, his attorney, and the trial judge. The waiver of rights form in both cases is identical and states, in pertinent part:
Your attorney has indicated to me that he has advised you of your rights (1) to a trial by jury, (2) to confront your accusers, and (3) against self-incrimination and that by entering a plea of guilty, you are waiving or giving up these rights. He has also indicated to me that you have advised him that you understand these things.
In the 1992 plea colloquy, the trial judge addressed defendant and stated, "Mr. Flagg, your attorney has indicated to me that he has advised you of [your] rights (1) to a trial by jury, (2) to confront your accusers, and (3) against self-incrimination; that by entering a plea of guilty you are waiving or giving up these rights. He has also indicated to me that you have advised him that you understand these things. Is that correct, sir?" Defendant replied in the affirmative. In the 1993 plea colloquy the trial judge similarly addressed the defendant and stated, "Mr. Robert Flagg, your attorney has indicated to me he has advised you of your rights to a trial by jury, to confront your accusers and against self-incrimination. He told me you're aware of the fact that by pleading guilty you are giving up these rights; is that correct?" Defendant answered affirmatively.
Defendant argues that the mere reading of the waiver of rights form during the plea colloquy was not sufficient to advise defendant of his constitutional rights because there was no independent advisal by the trial court. Once again, it is questionable whether defendant met his burden under Shelton to offer affirmative proof of an infringement of his rights. However, even assuming the burden shifted back to the state to prove defendant knowingly and intelligently waived his rights, we find that the state carried its burden.
In State v. Shelton, supra, the Supreme Court discussed several varieties of proof, other than a "perfect" transcript, that were found to be sufficient to meet the state's burden of proof in proving the validity of a predicate plea. As stated previously, the state introduced the waiver of rights form in both the 1992 and 1993 predicate pleas as well as minute entries, the commitments and the transcripts of the plea proceedings. These documents clearly show that defendant was advised of his rights and knowingly and voluntarily waived those rights prior to entering the two guilty pleas. Based on the foregoing discussion, we find that the trial court did not err in denying defendant's motion to quash the multiple bill of information based on either of these predicate pleas. Accordingly, we conclude that the trial judge was correct in finding defendant to be a fourth felony offender. This assigned error is without merit.

EXCESSIVE SENTENCE
In his final assigned error, defendant claims that his life sentence as a fourth felony offender is excessive and disproportionate to the crime committed. He relies on the fact that neither his present crime of possession of heroin nor his prior convictions are crimes of violence. Defendant further argues the trial court failed to articulate reasons for his sentence other than stating the sentence was mandated by statute.
Defendant, age 29, was sentenced to life imprisonment after being adjudged to be a fourth felony offender based on prior convictions for illegal possession of stolen *145 things, theft, and attempted simple burglary. Because defendant's underlying conviction for possession of heroin is a violation of the Uniform Controlled Dangerous Substances Law punishable by more than five years of imprisonment, his life sentence was mandated under LSA-R.S. 15:529.1(A)(1)(c)(ii).
Both the United States and the Louisiana Constitution prohibit the imposition of excessive or cruel punishment. U.S. Const. Amend. 8; La. Const. of 1974, Art. I, § 20. A sentence is constitutionally excessive, even if it is within the statutory limits, if it is grossly disproportionate to the severity of the offense or is nothing more than the needless and purposeless imposition of pain and suffering. The sentence imposed will not be set aside as excessive absent a showing of manifest abuse of the trial court's wide discretion to sentence within statutory limits. State v. Wickem, 99-1261 (La.App. 5 Cir. 4/12/00), 759 So.2d 961, writ denied, 00-1371 (La.2/16/01), 785 So.2d 839.
The Louisiana Supreme Court has repeatedly upheld the constitutionality of the Habitual Offender Law, and accordingly, the minimum sentences it imposes are likewise presumed to be constitutional. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672; State v. Dorthey, 623 So.2d 1276 (La. 1993).
A sentencing judge must always start with the presumption that a mandatory minimum sentence under the Habitual Offender Law is constitutional. A court may only depart from the minimum sentence if it finds that there is clear and convincing evidence in the particular case before it which would rebut this presumption of constitutionality. In order to rebut the presumption that the mandatory minimum sentence is constitutional, the defendant must clearly and convincingly show that he is exceptional, that is, that because of unusual circumstances he is a victim of the legislature's failure to assign sentences that are meaningfully tailored to the culpability of the offender, the gravity of the offense, and the circumstances of the case. Downward departures from the minimum sentence under the Habitual Offender Law should occur only in rare situations. State v. Lindsey, 99-3256 (La.10/17/00), 770 So.2d 339, cert. denied, ___ U.S. ___, 121 S.Ct. 1739, 149 L.Ed.2d 663 (2001); State v. Johnson, supra; State v. Dorthey, supra. A defendant's record of non-violent offenses cannot be the sole reason, or even the major reason, for declaring a mandatory minimum sentence excessive. State v. Johnson, supra.
In the present case, defendant made no showing of exceptional circumstances to justify a downward departure from the mandatory life sentence. In fact, no evidence was presented at the time of sentencing or at the motion for reconsideration of sentence and no argument was ever made regarding a downward departure from the required minimum sentence. Thus, we see no error in the sentence imposed by the trial judge.
As part of this assignment, defendant also complains about the trial court's failure to articulate reasons for the sentence imposed, as mandated by LSA-C.Cr.P. art. 894.1. Under the circumstances of this case, in which a mandatory life sentence was imposed, we find any error in the trial court's failure to articulate reasons for sentence to be of no consequence. See State v. Lowery, 33,905 and 33,906 (La.App. 2 Cir. 2/28/01), 781 So.2d 713. Accordingly, the arguments raised in this assigned error are likewise without merit.

ERROR PATENT DISCUSSION
We have also reviewed the record for errors patent, according to LSA-C.Cr.P. *146 art. 920 and State v. Oliveaux, 312 So.2d 337 (La.1975). Our review reveals no errors which require corrective action.
For the reasons set forth herein, the defendant's conviction and sentence are hereby affirmed.
AFFIRMED.
NOTES
[1] The state also filed a separate bill of information charging defendant with possession of cocaine in case number 99-6980. Although both charges were tried together, they were lodged as two separate appeals, 01-KA-65 (heroin conviction) and 01-KA-66 (cocaine conviction). The transcripts from the trial are contained in the instant appeal record.
[2] Alton Perry was charged as a co-defendant in both bills of information. However, Perry pled guilty to the charges and did not proceed to trial.
[3] Defendant and Proctor had a different version of events than Agent Horn. Proctor denied that Perry ever went into the house. However, defendant admitted that Perry went into the house but denied that anyone accompanied Perry when he exited the house. Both defendant and Proctor testified that Proctor flagged the car down that Perry was driving and asked for a ride to Winn Dixie.
[4] While there is nothing in the record indicating that this house is located in a high crime area, this court previously recognized this neighborhood as a high drug trafficking area in State v. Lee, 00-1253 (La.App. 5 Cir. 1/30/01), 782 So.2d 1063. Pursuant to State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, this court can take judicial notice of the high crime nature of the area.