772 So.2d 225 (2000)
STATE of Louisiana
v.
Michael BAKER, a/k/a Freddie McGraw.
No. 99-KA-2846.
Court of Appeal of Louisiana, Fourth Circuit.
October 18, 2000.
*226 Harry F. Connick, District Attorney, Nicole Brasseaux Barron, Assistant District Attorney, Derrick Edwards, Law Clerk, New Orleans, LA, Counsel for Plaintiff/Appellee.
J. Rodney Baum, Louisiana Appellate Project, Baton Rouge, LA, Counsel for Defendant/Appellant.
Court composed of Judge CHARLES R. JONES, Judge MIRIAM G. WALTZER, Judge PATRICIA RIVET MURRAY.
MURRAY, Judge.
Defendant Michael Baker appeals his conviction for attempted possession of cocaine claiming that the trial court erred in not granting a motion to suppress, and in imposing an unconstitutionally excessive sentence. He further submits that the trial court's failure to inform him of the time limitation for filing a petition for postconviction relief was error patent. For the following reasons, we affirm the conviction and sentence.

STATEMENT OF THE CASE
Michael Baker was charged with one count of possession of cocaine, a violation of La.Rev.Stat. 40:967. A six-person jury returned a responsive verdict of guilty of attempted possession of cocaine. After reviewing a presentence investigation report, the trial court sentenced Mr. Baker to thirty months at hard labor. A motion to reconsider sentence was denied, and a motion for an appeal was granted. The State then filed a multiple bill charging Mr. Baker as a third offender, to which he pled not guilty. At the multiple bill hearing, the trial court heard testimony from a fingerprint expert, found Mr. Baker to be a third offender, ordered the original sentence vacated, and sentenced him to life imprisonment athard labor. The trial court again denied a motion to reconsider sentence and ordered that the multiple bill proceedings be incorporated into the appeal.

STATEMENT OF THE FACTS
At trial, Officer Paul Noel testified that, on March 10, 1999 at approximately 2:20 p.m., he and his partner Officer Ron Stevens, along with Officers Joseph Meisch and Ken Bowen in a separate unit, saw Anthony Gaston standing on the sidewalk in front of 3505 Magnolia Street. Mr. *227 Gaston was drinking from a bottle of Wild Irish Rose, in violation of the open container law. All of the officers stopped and exited their police cars, and Officers Meisch and Bowen approached Mr. Gaston to give him a summons for the municipal violation. Officers Noel and Stevens were to ensure officers' safety. Accordingly, they watched two men who were sitting on the porch of 3505 Magnolia Street, a double shotgun residence. One of the men on the porch was Michael Baker. According to Officer Noel, Mr. Baker seemed "extremely nervous" and "real fidgety." Officer Noel observed Mr. Baker reach into his pocket, then put his hand to the side of his leg, and drop an object to the ground by his feet. Officer Noel testified that although he could not see what the object was, he believed, based upon Mr. Baker's nervous actions and the officer's prior experience with making narcotics arrests in the area, that the object was contraband. Officer Noel retrieved the object and found that it was a glass tube containing wire mesh and a visible white residue; he recognized the object to be a crack pipe. Officer Noel further testified that there was no fence in front of 3505 Magnolia although there was a fence in the back of the property.
Officer Ron Stevens, Officer Noel's partner, also testified at trial. Officer Stevens stated that there were five officers, himself and Officer Noel in one unit, and three officers, Meisch, Bowen, and Imbornone, in another unit, involved in the subject incident. Officer Stevens further testified that he and Officer Noel were approaching the men on the porch when Officer Noel gave a "966" which was the signal for a drug law violation. Officer Stevens immediately detained the second man on the porch. According to the testimony of Officer Stevens, he and his partner were approximately ten to fifteen feet away and were walking "up to" the area and would have stopped "at a distance just to maintain officer's safety" when Officer Noel saw Mr. Baker discard the contraband. Notably, according to Officer Stevens, Anthony Gaston was on the lawn of the residence.
The only other witness at trial was John Palm, a criminalist with the New Orleans Police Department who was stipulated to be an expert in the identification and analysis of controlled dangerous substances. He testified that he had washed the residue from the glass pipe that had been marked with the item number pertaining to the arrest. The residue tested positive for cocaine.

ERRORS PATENT:
A review of the record reveals an error in the sentence imposed. Mr. Baker was sentenced as a third offender; his predicate convictions were for simple robbery and armed robbery. Pursuant to La.Rev.Stat. 15:529.1(A)(1)(b)(ii), because at least one of the prior felonies is defined as a crime of violence, the minimum sentence which could be imposed was life imprisonment at hard labor without the benefit of parole, probation, or suspension of sentence. Although the trial court imposed a life sentence, it failed to order that the sentence must be served without the benefits of parole, probation, or suspension of sentence as required by statute, although the court did not actually suspend the sentence. Thus, the sentence is illegally lenient. However, because this is an error favorable to Mr. Baker and the State has not complained, the illegally lenient sentence cannot be corrected on appeal. State v. Fraser, 484 So.2d 122 (La.1986); State v. Samuels, 94-1408 (La.App. 4 Cir. 6/7/95), 657 So.2d 562.

DISCUSSION:

ASSIGNMENT OF ERROR NUMBER 1:
In his first assignment of error, Mr. Baker contends that the trial court erred when it denied the motion to suppress evidence.[1] He argues that the police *228 made a warrantless entry onto private property without probable cause. Mr. Baker relies on the fact that Officer Noel testified he was unable to determine from his vantage point on the sidewalk that the object dropped by Mr. Baker was contraband; thus, he argues, the State cannot allege that the plain view doctrine legitimizes the officer's entry into the yard of 3505 Magnolia Street and seizure of the object discarded while on private property. The State in its brief argues that Officer Noel witnessed Mr. Baker engage in suspicious activity and exhibit nervous behavior, in an area with a history of narcotics activity, and thus had reasonable suspicion to conduct an investigatory stop even though Mr. Baker was sitting on a porch at the time. The State further argues that once Officer Noel was adjacent to Mr. Baker, he could see the glass pipe which was obviously contraband.
In State v. Deary, 99-0627 (La.1/28/00), 753 So.2d 200, a case involving a police officer's entry into a yard of a home from which vantage point he saw contraband, the Supreme Court reversed the ruling of this Court[2] affirming the trial court's decision to grant the motion to suppress evidence. The Louisiana Supreme Court stated:
The front porch of a private residence falls within the curtilage of the home for Fourth Amendment purposes because it encompasses "the area around the home to which the activity of home life extends." Oliver v. United States, 466 U.S. 170, 181, n. 12, 104 S.Ct. 1735, 1743, 80 L.Ed.2d 214 (1984). A front porch does not necessarily enjoy the same measure of protection accorded the home by the Fourth Amendment, however, because of "an almost implicit understanding and custom in this country that, in the absence of signs or warning, a residence may be approached and the occupants summoned to the door by knocking." State v. Sanders, 374 So.2d 1186, 1189 (La.1979). Taking advantage of this custom in the present case, New Orleans Police officer Weise approached the front door on the porch of the residence located at 1924 Jackson Avenue, and knocked loudly on the side of the house to summon its occupants. The front door and screened door were open, and the officer could see far enough into the residence to observe the defendant standing in an interior doorway with his back to the front door while he talked on the telephone. At the sound of the officer's knock, the defendant turned, noticed Weise at the front door, and dropped to the floor a clear plastic bag filled with rock cocaine. The officer immediately rushed inside the residence, retrieved the cocaine, and placed the defendant under arrest.
* * *
In State v. Dixon, 391 So.2d 836, 838 (La.1980), this Court made clear that the police have "the same right as other members of the public to approach the doorway [of a home] and see what was exposed by the owner to the view of the general populace." We therefore upheld the warrantless search of the defendant's trailer in Dixon based on probable cause acquired when the officers, pursuing an unrelated investigation, looked through a glass pane of the front door and viewed marijuana in the living room of the trailer. Dixon, 391 So.2d at 838. Our holding in Dixon accords with the overwhelming weight of authority that "police with legitimate business may enter the areas of the curtilage which are impliedly open to use by the *229 public, and that in so doing they are free to keep their eyes open and use their other senses." 1 Wayne R. LaFave, Search and Seizure, § 2.3(c), p. 483 (1996) (internal quotation marks and footnotes omitted); see, e.g., United States v. Taylor, 90 F.3d 903, 909 (4th Cir.1996) (Police observation of cocaine and currency through large picture window next to the front door where the officers were standing did not constitute an illegal search because the front entrance "was as open to the law enforcement officers as to any delivery person, guest, or other member of the public."); Davis v. United States, 327 F.2d 301, 303 (9th Cir.1964) (Police officers' view of marijuana when front door of defendant's residence opened in response to their knock lawfully gave rise to probable cause to arrest the defendant; "[a]bsent express orders from the person in possession against any possible trespass, there is no rule of private or public conduct which makes it illegal per se, or a condemned invasion of the person's right of privacy, for anyone openly and peaceably, at high noon, to walk up the steps and knock on the front door of any man's `castle' with the honest intent of asking questions of the occupant there-of whether the questioner be a pollster, a salesman, or an officer of the law.").
State v. Deary, at pp. 1-3, 753 So.2d at 201-02.
According to the testimony in the instant case, Mr. Baker was sitting on the front porch of 3505 Magnolia Street approximately ten feet from the officers when he was observed dropping an object in the grass next to his feet. The police officers specifically testified that the front yard was not fenced in anyway. Thus, under Deary, this location was accessible to any member of the general public who may have chosen to walk into the front yard and onto the porch of the property. Because the contraband was visible to any casual visitor, the officer's observation of it did not violate any reasonable expectation of privacy that Mr. Baker may have had in the porch or adjacent yard.
In light of Deary, the trial court did not err in denying the motion to suppress evidence.

ASSIGNMENT OF ERROR NUMBER 2:
In his second assignment of error, Mr. Baker contends that there is an error patent because the trial court failed at sentencing to advise him of the time limits for filing a petition for post-conviction relief under La.Code Crim. Proc. art. 930.8. However, the failure to inform a defendant of this time limitation does not bestow an enforceable right. State v. Sherman, 99-2472 (La.App. 4 Cir. 5/3/00), 761 So.2d 660; State v. Guy, 95-0899 (La.App. 4 Cir. 1/31/96), 669 So.2d 517, 526, writ denied, 96-0388 (La.9/13/96), 679 So.2d 102.

EXCESSIVE SENTENCE:
Although not listed as a separate assignment of error, Mr. Baker argues that the life sentence imposed is excessive because the instant offense was for attempted possession of cocaine, essentially possession of narcotics paraphernalia. He further argues that the trial court failed to articulate reasons for imposing a life sentence as required by La.Code Crim. Proc. art. 894.1.
Article 1, Section 20 of the Louisiana Constitution of 1974 provides that "No law shall subject any person ... to cruel, excessive or unusual punishment." A sentence within the statutory limit is constitutionally excessive if it is "grossly out of proportion to the severity of the crime" or is "nothing more than the purposeless imposition of pain and suffering." State v. Francis, 96-2389 (La.App. 4 Cir. 4/15/98), 715 So.2d 457, writ denied 98-2360 (La.2/5/99), 737 So.2d 741. Generally, a reviewing court must determine whether the trial judge adequately complied with the sentencing guidelines set forth in La. Code Crim. Proc. art. 894.1, and whether the sentence is warranted in light of the *230 particular circumstances of the case. State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied 98-3054 (La.4/1/99), 741 So.2d 1282.
To insure adequate review by the appellate court, the record must indicate that the trial court considered the factors set forth in La.Code Crim. Proc. art. 894.1. State v. Forde, 482 So.2d 143, 145 (La.App. 4 Cir.1986); State v. Caston, 477 So.2d 868, 871 (La.App. 4 Cir.1985). Although a judge need not specifically recite each of the factors listed in La.Code Crim. Proc. art. 894.1, the record must reflect that the judge adequately considered the sentencing guidelines and that there is an adequate factual basis for the sentence imposed. State v. Soco, 441 So.2d 719 (La. 1983), appeal after remand 508 So.2d 915 (La.App. 4 Cir.1987).
In this case the trial court sentenced Mr. Baker after adjudicating him a third offender without giving any reasons. The judge simply announced that the sentence would be life imprisonment. Mr. Baker now asserts that this sentence is in violation of La.Code Crim. Proc. art. 894.1(C) which requires enunciation of reasons for the sentence. The State in its brief notes that, although no reasons for the sentence imposed were given at the time of the multiple offender sentencing, at original sentencing the trial court had the benefit of the presentence investigation report which it had ordered.
A review of the presentence investigation report shows that, in addition to the 1984 armed robbery and the 1991 simple robbery convictions listed in the multiple bill, Mr. Baker has a conviction for simple burglary in 1981, for which he received a four year sentence. Additionally, the presentence investigation report reflects that, at the time of the 1984 armed robbery arrest, Mr. Baker also was charged with aggravated rape and simple burglary. The rape charge was nolle prossed, but Mr. Baker entered a plea to the burglary charge. The report notes that Mr. Baker was released on parole on May 11, 1993 in the simple robbery case, but absconded and his parole was revoked on March 29, 1995. He was released on parole again on May 5, 1996 and again absconded; his parole was terminated unsatisfactorily on March 23, 1998. Mr. Baker also has a lengthy history of misdemeanor and municipal arrests. The instant offense occurred on March 10, 1999.
In an interview with the probation officer, Mr. Baker, who was born on May 15, 1963, stated he has never been married, but has one child. He has no work history and stated that he began using drugs in 1991, and uses $200-300 per week in powdered cocaine. The probation department recommended Mr. Baker, age thirty-five at the time of the report, receive the maximum sentence because of his "assaultive-violent criminal history" and the fact that he is "not supervisible" as evidenced by the ten years of supervision which consistently was unsuccessful. The report specifically noted that Mr. Baker's "lack of regard for the laws of this state is evident in his rampant terrorizing of the public," and that the defendant's sentence "should be bereft of any leniency." Notably, according to Mr. Baker's own statement in the presentence investigation report, he did not begin his drug use until 1991, but his record shows that he began his pattern of burglary and robbery in 1981.
This Court has found youth, lack of criminal history, family background, and redeeming virtues to be considerations in determining whether the mandated sentence is excessive. State v. Burns, 97-1553 (La.App. 4 Cir. 11/10/98), 723 So.2d 1013, writ denied, 98-3054 (La.4/1/99), 741 So.2d 1282. However, this Court has also held that the trial court did not err in imposing the minimum sentence where the young defendant showed no redeeming virtues. State v. Finch, 97-2060 (La.App. 4 Cir. 2/24/99), 730 So.2d 1020, writ denied 99-1240 (La.10/8/99), 750 So.2d 179.
*231 Because the minimum sentence is presumed constitutional, a trial court, in considering whether the minimum sentence for a particular crime would be unconstitutional if applied to a particular defendant, may deviate from the guidelines only if there is clear and convincing evidence to rebut the presumption of constitutionality. State v. Johnson, 97-1906 (La.3/4/98), 709 So.2d 672, 677. Here there was no evidence presented to the court to establish that Mr. Baker is an exception and should have received a lesser term of imprisonment. In fact, Mr. Baker's history reflects just the opposite; he is a thirty-five year old with a history of violent crimes and a total inability to change his life when given repeated opportunities to do so.
Accordingly, we affirm the conviction and sentence.
AFFIRMED.
NOTES
[1] The defense counsel originally waived the pretrial motion to suppress evidence based upon his review of the police report. He made an oral motion to suppress during the trial, before the State formally introduced the evidence, because he believed that the testimony of the police officers was not in conformity with the police report. The State did not object to the timeliness of the motion nor does it allege in its brief that the motion was untimely.
[2] State v. Deary, 98-3013 (La.App. 4 Cir. 2/3/99), 738 So.2d 207(unpublished).