841 So.2d 952 (2003)
STATE of Louisiana
v.
John DAVIS.
No. 02-KA-1008.
Court of Appeal of Louisiana, Fifth Circuit.
February 25, 2003.
*956 Paul D. Connick, Jr., District Attorney, Twenty-Fourth Judicial District Court, Parish of Jefferson, Terry M. Boudreaux, Alison Wallis, Assistant District Attorneys, Gretna, LA, for Appellee, State of Louisiana.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Appellant, John Davis.
Panel composed of Judges JAMES L. CANNELLA, THOMAS F. DALEY and SUSAN M. CHEHARDY.
SUSAN M. CHEHARDY, Judge.
On June 7, 2000, the Jefferson Parish District Attorney filed a bill of information charging defendant, John Davis, with possession of cocaine, in violation of La. R.S. 40:967 C. Defendant was arraigned on June 9, 2000, and pled not guilty. On December 15, 2000, the trial court heard and denied defendant's motion to suppress evidence. That same day, trial commenced. Also that day, the six-person jury found the defendant guilty as charged.
On February 9, 2001, defendant filed a Motion for New Trial, which was denied. After the defendant waived the statutory delays, the trial judge sentenced him to five years at hard labor. Defendant also filed a Motion to Reconsider Sentence that same day, which the trial judge denied. Also that day, the State filed a habitual offender bill of information, alleging defendant to be a third felony offender. Defendant *957 thereafter denied the allegations in the habitual offender bill.
On April 20, 2001, defendant filed a motion to quash the habitual offender bill of information, which the trial judge heard and denied on June 1, 2001. That same day, the trial court held the habitual offender hearing and found that defendant is a third felony offender. The trial judge then vacated defendant's original sentence and imposed an enhanced sentence of 20 years at hard labor. Because the trial judge deviated from the life sentence, which is the minimum mandatory sentence, required by the Habitual Offender Law, the State objected to the sentence as illegally lenient.[1] Defendant made an oral motion to reconsider sentence, which the court denied. Defendant also filed a Motion for Appeal on that day, which the trial judge granted on June 1, 2001.
FACTS
Deputy Lance Williams of the Jefferson Parish Sheriff's Office ("JPSO") testified that, at 1:59 a.m. on May 28, 2000, he responded to a call at Club 2000, a nightclub located on Brown Avenue near the Westbank Expressway in Harvey. Williams was accompanied by Deputy-Trainee Cory Newby. Deputy Michael Aicklen also responded to the scene.
Deputy Williams testified that defendant appeared nervous and agitated when he saw the officers enter. The deputies escorted defendant out of the bar. Deputy Williams attempted, for his safety, to patdown the defendant after they exited the club. Defendant pushed Deputy Williams and attempted to flee. In response, Deputy Williams placed defendant in a "compliance hold"[2] and escorted defendant to his patrol car. Deputy Williams placed defendant against the car, handcuffed him, and again attempted a pat-down of defendant.
During the course of the pat-down, defendant kicked Williams and knocked him to the ground by striking him in the chest with his knee. Still handcuffed, defendant fled on foot across the Westbank Expressway. Deputies Williams, Newby and Aicklen pursued him. Williams tackled defendant, knocking him to the ground, and subduing him. Deputy-Trainee Newby escorted defendant to the police car.
Deputy Newby testified that he searched defendant and recovered six small, off-white rocks, wrapped in plastic bags, from his left front pants pocket and a bag of green, leafy, vegetable-like material from his other front pocket. Newby gave the items to Deputy Williams. Daniel Waguespack, an expert in the analysis and identification of narcotics, testified that he tested two of the six white rocks, and the result was positive for cocaine. After hearing the evidence, the six-person jury found the defendant guilty as charged of possession of cocaine.
On appeal, defendant argues, in his first assignment of error, that the evidence should have been suppressed. He specifically complains that the officers lacked reasonable suspicion to stop him and, thus, the cocaine, which was found after the stop, should not have been admitted at trial. In its brief, the State implies that defendant is not entitled to challenge the trial court's ruling because his motion to suppress evidence was not in writing and did not allege specific grounds for suppression.
*958 Here, although the record does not contain a written motion to suppress the evidence, the record clearly shows that a suppression hearing was, in fact, held on December 15, 2000. That day, after hearing testimony from State's witnesses and argument from the defense and prosecution, the trial judge denied defendant's motion. Initially, we note that the State did not making a timely objection to the alleged "sufficiency" of the defendant's motion below and, as such, has not preserved that issue for review.[3] Moreover, there is no legal basis for the State's argument because our Code of Criminal Procedure does not contain a procedural bar to defendant's challenge of the trial court's denial of his motion to suppress evidence.[4]
The Fourth Amendment to the United States Constitution and Article I, Section V of the Louisiana Constitution prohibit unreasonable searches and seizures.[5] However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal behavior is recognized by state and federal jurisprudence.[6] The Terry standard is codified in La.C.Cr.P. art. 215.1, which allows a police officer "to stop a person in a public place whom he reasonably suspects is committing, has committed, or is about to commit an offense" and to demand that the person identify himself and explain his actions.
Reasonable suspicion for an investigatory stop is something less than probable cause, and must be determined under the facts of each case by whether the officer had sufficient knowledge of the facts and circumstances to justify an infringement on the individual's right to be free from governmental interference.[7] Absent reasonable suspicion, an investigatory stop is illegal, and the evidence seized as a result is suppressible.
The determination of reasonable grounds for an investigatory stop, or probable cause for arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action.[8] In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer "that might well elude an untrained person."[9] An officer's experience, his knowledge of recent criminal patterns, and his knowledge of an area's frequent incidence of crime, are factors that may support reasonable suspicion for an investigatory stop.[10] In determining whether the trial court's ruling on a defendant's motion to suppress is correct, the appellate *959 court may consider pertinent evidence adduced at both the suppression hearing and at trial.[11]
In this case, the testimony at the suppression hearing provides more information regarding the events leading up to defendant's arrest than the evidence at trial does. At the suppression hearing, Deputy Lance Williams testified that, in the early morning hours of May 28, 2000, he and Cory Newby, a JPSO trainee, received a dispatch that the owner of Club 2000, a nightclub located in a high-crime area of Harvey, needed assistance with an unruly patron. The club owner, Bobby Wilkerson, reported that a patron, who had previously been banned from the club, was in the club refusing to leave.
Williams testified that, when he and Newby arrived at the nightclub, Wilkerson met them at the door, pointed to defendant, and told the officers that he wanted defendant removed from the premises. When Wilkerson pointed out the defendant to the deputies, he was just "hanging around." As soon as defendant saw the officers, he put down his drink and began to back away from them. Defendant's demeanor changed, and he began to look wildly around the room. To Deputy Williams, defendant was looking for an escape route.
Deputy Williams then approached defendant, told defendant that the owner wanted him to leave, and asked defendant to leave the premises. Although the noise level in the club was high, defendant appeared to understand him. The officers escorted defendant to the door, one walking on either side of him. Williams testified that he didn't have any physical contact with defendant at that time. The officers were at the bar investigating a call from the owner regarding a patron who was apparently disturbing the peace and/or trespassing. Williams testified that defendant was free to go anywhere he wished, as long as he left the nightclub.
Williams stated that defendant appeared nervous and excited. As the officers escorted defendant to the door, defendant attempted to evade them by walking out ahead of them. Based on defendant's demeanor and his attempts to get away from the officers, Williams felt as if there was something amiss. He testified, "There was a reason that he was so crazy to get away from me. I didn't know if maybe he was carrying a weapon." Williams stopped defendant from leaving the area. He asked whether defendant had identification, and defendant replied that he did not. The officer asked defendant to put his hands against a wall so that he could perform a pat-down search. Defendant refused to comply, so Williams pushed defendant against the wall.
At the suppression hearing, the prosecutor asked Williams whether, at that time, he had "a reasonable suspicion to believe that perhaps a crime was about to be committed or had been committed." Williams responded, "Something was up, yes, ma'am." On cross-examination, the deputy testified that, while he hadn't seen a crime committed at that point, he was suspicious of defendant because he was trying so hard to get away from the officers. He strongly believed defendant wanted to leave because he was either carrying a weapon or drugs or he was wanted for some criminal offense.
Our initial inquiry is whether the facts elicited were sufficient to justify a Terry stop at this point. At the suppression hearing, the trial judge ruled, in part:
I'm going to deny the motion. I heard testimony that theuncontradicted *960 testimony ... that satisfies me that there was nervous evasive behavior, that it was in a high drug activity area, and that all of these put together, as well as some other minor factors that the officer testified to, provides for the objective justification for a brief detention under Terry and other cases....
We agree with the trial court's finding that the stop was proper. A defendant's presence in a high crime area, coupled with nervousness, startled behavior, flight or suspicious actions upon the approach of officers, is sufficient to justify and investigatory stop.[12] All of those factors were present in the instant case.
Because Williams had the reasonable suspicion necessary to make a Terry stop, he was entitled under La.C.Cr.P. 215.1 to question defendant about his identity and demand an explanation for his actions. The officer also had the authority to frisk defendant's outer clothing, if he reasonably suspected defendant had a weapon.
When Williams attempted to do a patdown search, however, defendant pushed himself away from the wall and collided with Deputy Williams. Williams then took defendant by the arm, walked defendant to his police car, and handcuffed defendant, with the intention of arresting him for battery on a police officer. Deputy Williams positioned defendant against the vehicle and again attempted to frisk him. While Deputy Williams was frisking him, defendant kicked back at Williams with both legs, turned, and kicked Deputy Williams in the chest with his knee. When Deputy Williams was knocked off balance, defendant fled on foot across the Westbank Expressway.
Both Deputy Williams and Deputy-Trainee Newby chased defendant. Williams tackled defendant and, after subduing him, advised defendant of his Miranda rights. Deputy Williams then handed defendant over to Deputy-Trainee Newby and another deputy, who escorted defendant back to the patrol car. Newby searched defendant, pursuant to a search incident to arrest, and found the cocaine.
Our next inquiry is whether the search that resulted in the cocaine seizure was valid. A search conducted without a warrant issued upon probable cause is per se unreasonable, unless justified by a specific exception to the warrant requirement.[13] When the constitutionality of a warrantless search is at issue on a motion to suppress, the State bears the burden of affirmatively showing that the search was justified by one of the exceptions to the warrant requirement.[14] One recognized exception is where a search is incident to a lawful arrest.[15] In a search incident to a lawful arrest, the officer may search the suspect's person and the area within his immediate control in order to remove weapons and prevent evidence from being destroyed.[16]
An arrest is lawful when it is *961 based on probable cause.[17] La.C.Cr.P. art. 201 provides:
Arrest is the taking of one person into custody by another. To constitute arrest there must be an actual restraint of the person. The restraint may be imposed by force or may result from the submission of the person arrested to the custody of the one arresting him.
The determination of whether an arrest occurred depends on the totality of the circumstances, but several factors distinguish an arrest from lesser infringements on personal liberty.[18] A prime characteristic of any Fourth Amendment seizure of a person is whether, under the totality of the circumstances, a reasonable person would not consider himself or herself free to leave.[19] Ultimately, whether a person has been arrested depends on circumstances indicating an intent to impose an extended restraint on the person's liberty.[20] In Fisher, the court found that forcibly restraining the defendant by handcuffing him and putting him in the back seat of the police car constituted an arrest, as no reasonable person could have believed he was "free to go" at that point.
Deputy Williams testified at the suppression hearing that, even though he considered defendant under arrest after defendant was handcuffed, he did not advise defendant that he was under arrest until after defendant ran from him. Nonetheless, Deputy Williams testified that, after he subdued defendant following the foot chase, he advised defendant of his Miranda rights, which clearly indicates that defendant was under arrest at that time. Deputy-Trainee Newby searched defendant and recovered the cocaine in his pocket subsequent to his arrest.
We find that the initial stop and subsequent arrest were lawful and, thus, the cocaine seized from defendant's pocket following his arrest was the result of a valid search incident to arrest. Based on those findings, we conclude that the seizure did not violate defendant's Fourth Amendment rights, and the trial court did not err in denying defendant's motion to suppress.
In his second assignment of error, defendant argues that his request for a mistrial should have been granted. Specifically, he contends that he was entitled to a mistrial when the State made references to the marijuana seized from defendant at the time of his arrest. He further asserts that he was prejudiced by the introduction of this "other crimes" evidence.
After defendant was arrested, Deputy-Trainee Newby seized marijuana from defendant's pocket. Defendant was charged in a separate bill of information since the possession of marijuana is a misdemeanor offense, triable by a judge. Prior to trial, the parties agreed that the trial judge would hear the marijuana charge and the jury would hear the cocaine charge in the same proceedings.[21] The prosecutor mentioned the seizure of the marijuana in her opening statement, without objection by the defense.
Apparently, the prosecution and the defense also agreed to have the State's expert chemist identify the marijuana outside of the jury's presence. During direct examination of the chemist, Daniel Waguespack, *962 however, the prosecutor produced a package containing all of the narcotics evidence, which included the marijuana. The prosecutor also asked Waguespack if he had tested "a green leafy material" and six off-white colored rocks for this case. Waguespack began to describe the procedure he followed in handling the evidence. Further, during Waguespack's testimony, the marijuana itself was on display.
Out of the jury's presence, defense counsel moved for a mistrial, on grounds that the State had produced "other crimes" evidence. The prosecutor argued that the marijuana was admissible as res gestae. The trial judge correctly noted that defense counsel did not make a timely objection during the opening statement. After hearing arguments on the matter, the trial court denied the mistrial motion.
Generally, evidence of other crimes committed by the defendant is inadmissible at trial because of the risk of grave prejudice to the defendant.[22] Moreover, La.C.Cr.P. art. 770 provides, in pertinent part:
Upon motion of a defendant, a mistrial shall be ordered when a remark or comment, made within the hearing of the jury by the judge, district attorney, or a court official, during the trial or in argument, refers directly or indirectly to:

* * *
(2) Another crime committed or alleged to have been committed by the defendant as to which evidence is not admissible;

* * *
Mistrial is a drastic remedy which should be employed only where remarks result in a substantial prejudice sufficient to deprive the defendant of a fair trial.[23] A determination of whether prejudice has resulted lies within the sound discretion of the trial judge.[24]
Initially, we note that defendant is not entitled to raise, on appeal, the prosecutor's mention of the marijuana in her opening statement because he failed to make a contemporaneous objection as required under La.C.Cr.P. art. 841.[25] Further, the prosecutor's reference to the marijuana during Waguespack's testimony arguably falls under the doctrine formerly known as res gestae. Under this doctrine, evidence that constitutes an integral part of the crime is admissible without prior notice to the defense. A close connexity between the charged and uncharged conduct is required to insure that the evidence is not admitted simply to depict the defendant as a bad person, "but rather to complete the story of the crime on trial by proving its immediate context of happenings near in time and place."[26]
Nevertheless, even if the marijuana reference was not necessary to complete the story of the crime at issue but *963 was merely used to show defendant's bad character, it is well settled that, on appellate review, improper references to other crimes are subject to the harmless error rule. The test for determining harmless error is whether the verdict actually rendered in the case was surely unattributable to the error.[27]
Defendant concedes, in his appellate brief, that his own counsel mentioned the seizure of the marijuana in his closing argument. Thus, the verdict rendered, in this case, cannot be attributed solely to the erroneous reference by the prosecutor. Defendant's trial counsel contributed to any prejudice defendant may have suffered. We find that, even if the trial court erred in allowing the prosecutor to refer to the marijuana, its denial of defendant's mistrial motion was harmless.
In his third assignment of error, defendant argues that his motion to quash the multiple bill should have been granted. Specifically, he argues that the State failed to meet its burden of showing that his guilty plea to one of the predicate felonies in the habitual offender bill was made knowingly and voluntarily.
Here, the two prior felonies alleged by the State were a conviction for distribution of cocaine in Jefferson Parish in 1996 (case number 96-6214), and a conviction for possession of cocaine with intent to distribute in Jefferson Parish in 1990 (case number 89-4982). Defendant allegedly pled guilty to both offenses.
On April 20, 2001, defendant filed a motion to quash the habitual offender bill, alleging that his guilty plea in case number 89-4982 was defective because he was not informed of his right against self-incrimination. Defendant attached, to his motion, a transcript of the guilty plea proceedings in case number 89-4982 and guilty plea/advisal of rights forms for both cases (89-4982 and 96-6214).
After a hearing on June 1, 2001, the trial judge denied the motion to quash. On the same day, the court held a habitual offender hearing and found defendant to be a third felony offender.
On appeal, defendant reasserts the arguments he made below. When the State relies on a prior conviction that is based on a guilty plea to prove the defendant's habitual offender status, it has the burden of proving the existence of that guilty plea and that the defendant was represented by counsel. If the State meets that burden, then the burden shifts to the defendant to produce some affirmative evidence of an infringement of his rights or of a procedural irregularity. If the defendant meets this burden, the burden shifts back to the State to prove the constitutionality of the plea. The State can meet this burden by producing a "perfect" transcript of the guilty plea colloquy.
A "perfect" transcript is one that reflects a voluntary, informed, and express waiver of the constitutional rights expressed in Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969): the rights to trial by jury and confrontation, and the privilege against self-incrimination. Anything less than a "perfect" transcript, e.g., a guilty plea form, minute entry, or imperfect transcript, must be weighed by the trial judge, who makes a determination as to whether the defendant's prior plea was knowing and voluntary.[28]
*964 Defendant maintains that the advisal was insufficient because the trial judge did not specifically inform him that he had the right to remain silent if he went to trial. We have examined the transcript of defendant's guilty plea proceeding in case number 89-4982, submitted by defendant himself. We find that the transcript reflects that defendant was fully and properly advised of his Boykin rights at the time of his guilty plea. We find no error in the trial judge's denial of defendant's motion to quash.
Finally, as is our procedure under La. C.Cr.P. art. 920, we have reviewed the record for errors patent. First, we note that the trial court imposed an illegally lenient habitual offender sentence.
On June 1, 2001, defendant was found to be a third-felony offender and sentenced to 20 years at hard labor pursuant to La. R.S. 15:529.1.
Defendant's underlying conviction is a felony drug offense committed on May 28, 2000. At the time defendant committed the underlying offense, the applicable portion of the Habitual Offender Law, LSA-R.S. 15:529.1(A)(1)(b)(ii), read as follows:
If the third felony or either of the two prior felonies is a felony defined as a crime of violence under R.S. 14:2(13) or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for more than five years or any other crime punishable by imprisonment for more than twelve years, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
In Act 403 of the 2001 Regular Session, effective June 15, 2001, the Louisiana Legislature amended La. R.S. 15:529.1(A)(1)(b)(ii) to read as follows:
If the third felony and the two prior felonies are felonies defined as a crime of violence under R.S. 14:2(13), a sex offense as defined in R.S. 15:540 et seq. when the victim is under the age of eighteen at the time of commission of the offense, or as a violation of the Uniform Controlled Dangerous Substances Law punishable by imprisonment for ten years or more, or any other crimes punishable by imprisonment for twelve years or more, or any combination of such crimes, the person shall be imprisoned for the remainder of his natural life, without benefit of parole, probation, or suspension of sentence.
This Court has held that the pre-amendment version of La. R.S. 15:529.1 applies when the underlying offense is committed before the effective date of Act 403, even when the sentence is imposed after the effective date of Act 403.[29] As noted above, defendant's underlying offense was committed on May 28, 2000; thus, under our current jurisprudence, the pre-amendment statute is applicable in this case.
Under the pre-amendment statute, the mandatory minimum sentence for defendant is life imprisonment without benefit of parole, probation, or suspension of sentence. Here, the trial judge sentenced defendant to 20 years at hard labor. Moreover, the trial judge failed to require that the sentence be served without benefit of parole, probation, or suspension of sentence. Defendant's sentence is, thus, illegally lenient.
This Court has authority under La.C.Cr.P. art. 882 to correct an illegally lenient sentence despite the failure of either *965 party to raise the issue in the district Court or on appeal.[30] Nonetheless, we also recognize that La.C.Cr.P. art. 882 is permissive.[31] Further, this Court has recognized that the trial judge, as in this case, may consider the legislative change to the habitual offender statute as evidence of its intent.[32]
In this case, the trial court acted in response to defense counsel's request for leniency, based on State v. Dorthey, 623 So.2d 1276 (La.1993).[33] Before imposing sentence, the trial judge commented, "And now in this case I don't think it is the purposeless imposition of pain and suffering but I do think if I sentence him to life for possession it is grossly out of proportion to the severity of the crime."
Considering that the trial court gave extensive and specific reasons under Dorthey for deviating from the mandatory minimum sentence, and the State does not challenge the sentence on appeal, we decline to exercise the discretion provided in La.C.Cr.P. art. 882 to correct defendant's illegally lenient sentence under the facts presented in this case.[34]
Finally, we note that the trial court's advisal at defendant's original sentencing of the time limits provided in La.C.Cr.P. art. 930.8 was incomplete. We remand, therefore, for the limited purpose of allowing the district court to inform the defendant of the provisions of Article 930.8 by sending appropriate written notice to the defendant within ten days of the rendition of the Court's opinion and to file written proof of such notice in the record.[35]
Based on the foregoing, defendant's conviction and sentence are affirmed. We remand for the trial court to inform the defendant of the delays for filing for postconviction relief.
AFFIRMED AND REMANDED.
NOTES
[1] Although the prosecutor noticed her intent to file an application for supervisory writs to challenge the defendant's sentence, the record does not reflect that the State filed a writ application.
[2] Williams explained that a "compliance hold" is a police technique in which the officer holds the suspect's arm, applying pressure between the elbow and the wrist.
[3] La.C.Cr.P. art. 841.
[4] See La.C.Cr.P. arts. 521 and 703; State v. Baker, 99-2846, p. 4 (La.App. 4 Cir. 10/18/00), 772 So.2d 225, 227, fn. 1.
[5] State v. Ponder, 607 So.2d 857, 859 (La.App. 2 Cir. 1992); State v. Belton, 441 So.2d 1195, 1198 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
[6] Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, supra; State v. Williams, 98-1006 (La.App. 5 Cir. 3/30/99), 735 So.2d 62, writ denied, 99-1077 (La.9/24/99), 747 So.2d 1118.
[7] State v. Duckett, 99-314, p. 5 (La.App. 5 Cir. 4/11/01), 740 So.2d 227, 230.
[8] State v. Kalie, 96-2650, pp. 1-2 (La.9/19/97), 699 So.2d 879, 880, per curiam; State v. Hill, 01-1372, p. 5 (5 Cir. 5/15/02), 821 So.2d 79, 83.
[9] State v. Huntley, 97-0965, p. 2 (La.3/13/98), 708 So.2d 1048, 1049 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
[10] State v. Hughes, 02-11, p. 6 (La.App. 5 Cir. 5/29/02), 821 So.2d 491, 495, writ denied, 02-1782 (La. 12/19/02), 833 So.2d 330.
[11] State v. Nelson, 02-65, p. 4 (La.App. 5 Cir. 6/26/02), 822 So.2d 796, 799.
[12] State v. Hughes, 02-11 at p. 6, 821 So.2d at 495; State v. Martin, 99-123, p. 6 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 102.
[13] Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967); State v. Moreno, 619 So.2d 62 (La. 1993).
[14] State v. Tatum, 466 So.2d 29 (1985); State v. Landry, 99-396, p. 4 (La.App. 5 Cir. 8/31/99), 742 So.2d 986, 989.
[15] Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969); State v. London, 01-1016, p. 7 (La.App. 5 Cir. 3/13/02), 815 So.2d 162, 165.
[16] State v. London, 815 So.2d at 165-166.
[17] State v. Fisher, 97-1133, p. 5 (La.9/9/98), 720 So.2d 1179, 1183.
[18] State v. Fisher, 720 So.2d at 1183.
[19] Id.
[20] Id.
[21] The judge also heard a misdemeanor charge of battery on a police officer. At the conclusion of trial, the judge found defendant guilty as to both misdemeanor charges. Those convictions are not part of this appeal.
[22] State v. Curtis, 99-45, pp. 5-6 (La.App. 5 Cir. 7/27/99), 739 So.2d 931, 937, writs denied, 99-1950 (La.12/17/99), 751 So.2d 873, 99-2679 (La.3/31/00), 758 So.2d 810.
[23] State v. Eskano, 00-101, p. 14 (La.App. 5 Cir. 1/30/01), 779 So.2d 148, 155.
[24] Id.
[25] See also, State v. Rogers, 98-2501 (La.App. 1 Cir. 9/24/99), 757 So.2d 655, writ denied, 99-3526 (La.6/16/00), 764 So.2d 962 (failure to object during prosecution's opening statement to alleged reference to "other crimes" evidence precluded appellate review of the claim).
[26] State v. Charles, 00-1586, p. 5 (La.App. 5 Cir. 6/27/01), 790 So.2d 705, 708 (quoting State v. Colomb, 98-2813 (La. 10/1/99), 747 So.2d 1074.)
[27] Id. At 709 (quoting State v. Johnson, 94-1379 (La. 11/27/95), 664 So.2d 94, 102).
[28] State v. Shelton, 621 So.2d 769 (La. 1993); State v. Flagg, 01-65, pp. 13-14 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, 143, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159.
[29] See State v. Ventress, 01-1165 (La.App. 5 Cir. 4/30/02), 817 So.2d 377, 380-383; State v. Flagg, 01-965 (La.App. 5 Cir. 3/26/02), 815 So.2d 208, 209-212, with one judge dissenting with reasons.
[30] State v. Williams, 00-1725 (La.11/28/01), 800 So.2d 790. Although the State objected to the leniency of the sentence at the multiple offender proceeding, the State did not argue the illegality of the sentence on appeal.
[31] State v. Jordan, 02-820 (La.App. 5 Cir. 12/30/02), 836 So.2d 609.
[32] State v. Ventress, 817 So.2d at 384 (citing State v. Clark, 391 So.2d 1174, 1176 (La. 1980)).
[33] In Dorthey, the supreme court held that the trial judge is empowered to deviate from a mandatory minimum sentence in a habitual offender proceeding.

If ... the trial judge were to find that the punishment mandated by R.S. 15:529.1 makes no "measurable contribution to acceptable goals of punishment" or that the sentence amounted to nothing more than "the purposeful imposition of pain and suffering" and is "grossly out of proportion to the severity of the crime," he has the option, indeed the duty, to reduce such sentence to one that would not be constitutionally excessive.
Dorthey, 623 So.2d at 1280-1281.
[34] Defendant's sentence will be served without benefits under the self-activating provisions of La. R.S. 15:301.1 A.
[35] See, State v. Stelly, 98-578, p. 6 (La.App. 5 Cir. 12/16/98), 725 So.2d 562, 564.