877 So.2d 1151 (2004)
STATE of Louisiana
v.
Roderick MITCHELL.
No. 04-KA-136.
Court of Appeal of Louisiana, Fifth Circuit.
June 29, 2004.
*1152 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Anne Wallis, Donald A. Rowan, Assistant District Attorneys, Gretna, LA, for Plaintiff/Appellee.
Holli Herrle-Castillo, Louisiana Appellate Project, Marrero, LA, for Defendant/Appellant.
Panel composed of Judges SOL GOTHARD, THOMAS F. DALEY and MARION F. EDWARDS.
SOL GOTHARD, Judge.
In this criminal matter defendant, Roderick Mitchell, appeals his conviction and sentence on a charge of possession of cocaine in violation of La. R.S. 40:967(C). For reasons that follow, we affirm.
The record shows that defendant originally entered a not guilty plea at his arraignment, and filed a motion to suppress the evidence. After the motion to suppress was denied, defendant withdrew his not guilty plea and entered a plea of guilty pursuant to State v. Crosby, 338 So.2d 584 (La.1976). Subsequently, defendant was *1153 sentenced to serve five years at hard labor. The State filed a bill of information alleging that defendant was a second felony offender. Defendant stipulated to the multiple bill allegation and admitted to being a second felony offender. In so doing he again reserved his right to appeal the denial of the motion to suppress the evidence pursuant to State v. Crosby, supra. The trial court vacated the original sentence and re-sentenced defendant to imprisonment at hard labor for five years to run concurrent with his parole violation. Defendant filed a timely appeal that was granted.
At the suppression hearing, Jefferson Parish Sheriff's Office Deputy A.J. Thibodeaux of the Street Crimes Unit testified that, on June 21, 2003, at 8:52 p.m., he and Deputy Guillot, his partner, were on patrol. As they turned left onto Cooper Street from Whitney Avenue, they slowed down to wait for two black males, later identified as defendant and Jahmal Tipado, to walk across Cooper Street from a corner grocery store toward an apartment complex.
Deputy Thibodeaux explained that it was getting dark, but that the grocery store and the apartment complex were lit up. He recalled that, as the two pedestrians made the turn onto Cooper Street, defendant and Mr. Tipado looked back at the officers' vehicle. As defendant approached the side of the street toward a grassy area, he threw an object toward the apartment complex and continued to walk.
Deputy Thibodeaux testified that he was within ten feet behind defendant when he saw defendant throw the object. Because they were in a high narcotic, high crime area, and because they were familiar with such circumstances, Deputy Thibodeaux thought he had reasonable suspicion to stop defendant and retrieve the object. Deputy Thibodeaux explained that shortly before this occurred, he had stopped persons (like defendant) who threw down objects that he believed to be narcotics. He further testified that such activity was consistent with his other arrests and the nature of the area.
Deputies Thibodeaux and Guillot exited the vehicle. Deputy Thibodeaux detained the two black males and filled out identification cards on them while Deputy Guillot recovered the object, which tested positive at the scene for powdered cocaine.
Sergeant Kevin Guillot testified at the suppression hearing, and his testimony largely corroborated that of Deputy Thibodeaux. Sgt. Guillot testified that the two men were walking across the street and that once they approached the grassy area between the sidewalk and the street, defendant dropped something to the ground "very discreetly." Sgt. Guillot did not know what the object was, but he believed it was contraband based on defendant's furtive movements, his nervous actions walking across the street, his looking back at Sgt. Guillot once they got across the street, his hurried step afterwards, and that defendant said something to the man with whom he was walking. Sgt. Guillot stated that he and Deputy Thibodeaux were both uniformed and clearly visible in their car as police officers.
Sgt. Guillot exited the vehicle and walked right over and retrieved the object. He explained that he never lost sight of the object, that he knew exactly where it was in the grass, and that there was nothing else around it.
Jahmal Tipado, who was called as a witness by the defense, testified that on the night in question, he and defendant left the store and were walking across the street and talking. When they got to the other side of the street, the police pulled in front of them. At that time, defendant was standing in the grass and Mr. Tipado was standing on the curb. The officers *1154 told Mr. Tipado to put his drink down, and they handcuffed him.
The officers subsequently picked up some drugs approximately eleven or twelve feet from where defendant and Mr. Tipado were standing and questioned them about possession of the contraband. Mr. Tipado testified that he did not see defendant drop anything to the ground. Mr. Tipado testified that he always saw police officers in the area, which he admitted was a high crime area.
The only assignment presented for our review concerns the denial of the motion to suppress the evidence. In that regard defendant argues the trial court should have suppressed the evidence because the officers did not have reasonable suspicion to stop him. He asserts that the officers could not identify the object that he allegedly dropped, and that there was no indication that the object was contraband.
Additionally, defendant argues that the testimony of Sgt. Guillot and Deputy Thibodeaux was inconsistent, in that Sgt. Guillot testified that defendant discreetly dropped the object, whereas Deputy Thibodeaux testified that defendant threw down the object. Defendant also asserts that the officers could not see what they claimed to have seen because it was dark outside, and because they were at least ten feet away from him at the time.
Finally, defendant refutes the officers' contention that he dropped the object after observing them in the police car. He explains that he could not tell that the persons inside the car were police officers or that the officers were even inside a police car, because it was dark outside, and because the car was unmarked and had tinted windows.
The State responds that the officers had reasonable suspicion to justify a stop of defendant, that there was no unlawful actual or imminent actual stop of defendant, and that the difference between the officers' testimony was irrelevant.
The Fourth Amendment to the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by La.C.Cr.P. art. 215.1, as well as state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984).
The right to make an investigatory stop and question the particular individual detained must be based upon reasonable suspicion to believe that he has been, is, or is about to be engaged in criminal activity. State v. Miskel, 95-584 (La.App. 5 Cir. 1/30/96), 668 So.2d 1299, 1302. Reasonable suspicion is something less than probable cause and is determined under the facts and circumstances of each case by whether the officer had sufficient facts within his knowledge to justify an infringement on the individual's right to be free from governmental interference. State v. Sanders, 97-892 (La.App. 5 Cir. 3/25/98), 717 So.2d 234, 240, writ denied, 98-1163 (La.9/25/98), 724 So.2d 774.
When determining whether an investigatory stop was justified by reasonable suspicion, a reviewing court must consider the totality of the circumstances, "giving deference to the inferences and deductions of a trained police officer." State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049; State v. Martin, 99-123 (La.App. 5 Cir. 6/1/99), 738 So.2d 98, 101. The reputation of an area as one of high crime is an articulable fact upon which an officer may legitimately rely in making a determination as to reasonable cause for an investigatory stop. State v. Barney, 97-777 (La.App. 5 Cir. 2/25/98), 708 So.2d *1155 1205, 1207. Other factors that may support reasonable suspicion for an investigatory stop are an officer's experience, his or her knowledge of recent criminal patterns, and his or her knowledge of an area's frequent incidence of crimes. State v. Martin, 738 So.2d at 102.
The determination of reasonable grounds for an investigatory stop, or probable cause for arrest, does not rest on the officer's subjective beliefs or attitudes, but turns on a completely objective evaluation of all the circumstances known to the officer at the time of his challenged action. State v. Davis, 02-1008 (La.App. 5 Cir. 2/25/03), 841 So.2d 952, 958, writ denied, 03-0948 (La.11/7/03), 857 So.2d 516, citing State v. Kalie, 96-2650 (La.9/19/97), 699 So.2d 879, 880, per curiam and State v. Hill, 01-1372 (La.App. 5 Cir. 5/15/02), 821 So.2d 79, 83.
In considering those circumstances, a reviewing court should give deference to the inferences and deductions of a trained police officer "`that might well elude an untrained person.'" State v. Davis, 841 So.2d at 958, citing State v. Huntley, 97-0965 (La.3/13/98), 708 So.2d 1048, 1049 (quoting United States v. Cortez, 449 U.S. 411, 418, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981)).
Evidence recovered as a result of an unconstitutional search or seizure is inadmissible. Consequently, property abandoned by an individual and recovered by the police as a direct result of an unconstitutional seizure may not be used in a subsequent prosecution. State v. Tucker, 626 So.2d 707, 710 (La.1993). If, however, property is abandoned prior to any unlawful intrusion into a citizen's right to be free from governmental interference, then the property may be lawfully seized and used in a resulting prosecution. Id. In this latter situation, the citizen has no reasonable expectation of privacy and there is no violation of his custodial rights. Id. Because these rules of inadmissibility are intended to protect individuals from unwarranted, forcible governmental interference, "`it is only when the citizen is actually stopped without reasonable cause or when a stop without reasonable cause is imminent that the `right to be left alone' is violated, thereby rendering unlawful any resultant seizure of abandoned property.'" Id. at 710-11 (quoting Belton, 441 So.2d 1195, 1199 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984) (emphasis in original)).
In Tucker, the Louisiana Supreme Court, adopting the U.S. Supreme Court's pronouncement in California v. Hodari D., 499 U.S. 621, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991), held that an individual has been "actually stopped," i.e., seized, for purposes of La. Const. art. I, § 5 when he submits to a police show of authority or when he is physically contacted by the police. Additionally, this Court determined that even when an actual stop has not been effectuated, our constitution still mandates a finding that an individual has been seized if an actual stop is "imminent." An actual stop is imminent "only when the police come upon an individual with such force that, regardless of the individual's attempts to flee or elude the encounter, an actual stop of the individual is virtually certain...." State v. Tucker, 626 So.2d at 712 (emphasis in original).
Factors to consider in determining whether an actual stop is imminent, which this Court enumerated in State v. Riggins, 97-1194 (La.App. 5 Cir. 8/25/98), 718 So.2d 569, 571, writ denied, 98-2520 (La.1/15/99), 736 So.2d 206, are:
1. The proximity of the police in relation to the defendant at the outset of the encounter;
2. Whether the individual has been surrounded by the police;
3. Whether the police approached the individual with their weapons drawn;

*1156 4. Whether the police and/or the individual are on foot or in motorized vehicles during the encounter;
5. The location and characteristics of the area where the encounter takes place;
6. The number of police officers involved in the encounter.
The trial court's decision to deny a motion to suppress is afforded great weight and will not be set aside unless the preponderance of the evidence clearly favors suppression. State v. Flagg, 01-65 (La.App. 5 Cir. 7/30/01), 792 So.2d 133, writ denied, 01-2534 (La.9/20/02), 825 So.2d 1159.
In the instant case, the relevant inquiry is whether, at the time defendant abandoned the cocaine, the officers had illegally accomplished an actual or imminent actual stop. The record reflects that defendant was not actually stopped until after he abandoned the cocaine. The record also reflects that an unlawful actual imminent stop did not trigger defendant's abandonment of the cocaine.
Defendant was not surrounded by the police. Rather, only one officer approached defendant and Mr. Tipado while the other officer retrieved the object. Further, defendant discarded the contraband before Sgt. Guillot exited the vehicle and asked defendant to walk over to him. Nothing in the record indicates that the police came upon defendant with such force that regardless of his attempts to flee, an actual stop was virtually certain. Since defendant discarded the cocaine prior to any unlawful intrusion by the police, the cocaine was lawfully seized.
Additionally, defendant's abandonment of the object, added to the time of the night and the reputation of the area, gave the officers reasonable suspicion to detain defendant while they retrieved the object. Once the officers tested the substance they retrieved, and it tested positive for cocaine, the officers had probable cause to arrest defendant. See; State v. Handy, 02-1025 (La.App. 4 Cir. 9/25/02), 828 So.2d 1207.
We find no merit in defendant's argument.
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920; State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). The review reveals errors patent in this case. The transcript reflects that the trial judge ordered defendant's enhanced sentence to run concurrent with his parole violation. However, the commitment indicates that the trial judge ordered defendant's enhanced sentence to run concurrently with any other sentence and parole violation. Where there is a conflict between the transcript and the minute entry, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we remand the matter to the trial court with instructions to amend the commitment to reflect the sentence pronounced in the transcript.
In imposing the multiple offender sentence, the trial judge failed to state that this sentence was to be served without benefits of probation or suspension of sentence, pursuant to LSA-R.S. 15:529.1(G). This error patent does not require any action by this Court because LSA-R.S.15:301.1(C)[1], as interpreted by *1157 State v. Williams, 00-1725 (La.11/28/01) 800 So.2d 790, 799 imposes these restrictions by operation of law.
For the foregoing reasons, the defendant's conviction and sentence is affirmed and the matter is remanded to the trial court for correction of the commitment as instructed in this opinion.
AFFIRMED AND REMANDED.
NOTES
[1] LSA-R.S. 15:301.1(C) applies to those situations in which a criminal statute requires, "all or a portion of a criminal sentence be served without benefit of probation, parole, or suspension of sentence, or of any one of them, any combination thereof, or any substantially similar provision or combination of substantially similar provisions." Pursuant to LSA-R.S. 15:301.1(A), the restrictions are deemed to be imposed, even when the trial judge does not specifically mention those restrictions.